UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
   PNCEF, LLC,

   f/k/a

   NATIONAL CITY COMMERCIAL CAPITAL
   COMPANY, LLC,

                   Plaintiff,

          -against-

   OMNI WATCH AND CLOCK COMPANY, LLC,
   and ROBERT SCHNECK,

                   Defendants.

**MEMORANDUM & ORDER**

09-CV-0975(NGG)(JO)

-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff National City Commercial Capital Company, LLC ("National City")[1] brings this contract action against Omni Watch and Clock Company, LLC ("Omni Watch") and Robert Schneck (collectively, "Defendants"). (Complaint (Docket Entry # 1).) National City claims that its predecessor-in-interest, Varilease Finance, Inc. ("Varilease"), entered into a lease agreement with Omni Watch, guaranteed by Robert Schneck, for watch display cases. (Id. ¶ 6, Ex. A.) National City alleges that Omni Watch has defaulted on its lease by failing to make monthly payments since January 1, 2009. (Id.) National City seeks restitution of $573,062.66, title and possession of the watch cases, and attorneys' fees and interest as provided by the lease. (Id.) Defendants admit signing the lease but deny they have defaulted. (Answer ¶¶ 3, 4 (Docket Entry # 6).) National City moves for summary judgment; Defendants have not responded to National City's motion. (Motion for Summary Judgment ("Motion") (Docket Entry # 19).) As

---

[1] In Plaintiff's Rule 56.1 Statement (Docket Entry # 19), Plaintiff asks the court to change the caption of this case to reflect a change in its name from National City Commercial Capital, LLC to PNCEF, LLC. The court corrects the caption here.

1

set forth below, the court grants National City's motion and awards National City $595,478.13 in contractual damages, $74,270.22 in prejudgment interest, and title to the watch cases.

I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are "no genuine issues of material fact." See Fed. R. Civ. P. 56(c). A dispute regarding a fact is "genuine" if a reasonable finder of fact, viewing the evidence, could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" when "it might affect the outcome of the suit under the governing law." Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003). The burden to show the absence of a genuine factual dispute falls on the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

Where the non-moving party does not respond to the motion for summary judgment, the court may not grant the motion by default. Although the non-movant's failure to respond "may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Vt. Teddy Bear Co v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) (internal citations and quotation marks omitted). Accordingly, in reviewing a motion for summary judgment – even one that is unopposed – the court must "determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id. (internal quotation marks omitted). The court may accept uncontested affidavits for their truth in summary judgment

proceedings. Weinstein v. Albright, 261 F.3d 127, 127 (2d Cir. 2001); C.R.A. Realty Corp. v. Tri-South Investments, 738 F.2d 73, 73 (2d Cir. 1984). If the evidence presented by the movant establishes the non-movant's liability, "summary judgment should, if appropriate, be entered against that party." See Fed. R. Civ. P. 56(e).

## II. FINDINGS OF FACT

On May 5, 2008, Omni Watch entered into a Master Lease Agreement ("MLA") with Varilease to lease $500,000 of watch display cases for forty-eight months, with a Base Monthly Rent of $12,950. (Complaint, Ex. A; Answer ¶ 3.) On the same day, Omni Watch and Varilease executed an amendment to the MLA, specifying the value of the watch cases as $526,500.00, and the Base Monthly Rent as $13,636.35. (Complaint, Ex. A; Answer ¶ 3.) Also on May 5, 2008, Robert Schneck, president of Omni Watch, signed a Guaranty Agreement to the MLA. (Complaint, Ex. B; Answer ¶ 3.) On May 6, 2008, Aaron Schneck, Vice President and Treasurer of Omni Watch, signed a Certificate of Incumbency that stated that the MLA and Guarantee Agreement had been "duly authorized" by Omni Watch. (Affidavit of Lisa Marie Moore ¶ 4, Ex. C ("Moore Aff.") (Docket Entry # 15-1); see Answer ¶ 3.) On May 13, 2008, Varilease assigned the MLA and Guaranty Agreement to National City. (Complaint, Ex. C; Answer ¶ 3.) On May 21, 2008, Omni Watch entered into a Assignment of Lease Without Recourse agreement with National City. (Moore Aff. ¶ 5, Ex. D.)

National City contends that Omni Watch has defaulted under the MLA by failing to make any monthly payments from January 1, 2009 through the present. (Complaint ¶ 6.) In their Answer, Defendants admit to signing the MLA and Guarantee Agreements but deny that they have defaulted under the MLA. (Answer ¶ 4.) As affirmative defenses to the amount of damages, Defendants assert that the MLA requires National City to mitigate damages by "re-

3

possessing" the leased watch cases from their locations in "various retail stores" (Answer ¶¶ 13-14), and that the MLA's interest provision for amounts past due is usurious (Answer ¶¶ 16-18).[2] On November 17, 2009, both parties represented to the Magistrate Judge that the case is ripe for resolution, either by summary judgment or by trial, signaling to the court that Defendants do not intend to respond to National City's motion. (Docket Entry # 14.)

In their Answer, Defendants admit substantially all of National City's allegations as to their liability under the MLA. (See Answer ¶ 3.) The only "genuine issue of material fact" even potentially at issue is whether Omni Watch has failed to make monthly payments to National City as required by the MLA. See Fed. R. Civ. P. 56(c).

To prove that Omni Watch has failed to make the monthly rent payments required by the MLA, National City submits the uncontested affidavit of Lisa Marie Moore, Senior Corporate Counsel of National City, attesting that Omni Watch has "failed to make the required monthly payments for January 1, 2009 and each month thereafter." (Moore Aff. ¶ 6.) National City also submits a Rule 56.1 statement stating the same. (Rule 56.1 Statement.) Defendants submit nothing to counter either the Moore Affidavit or National City's Rule 56.1 statement. Even viewed in the most favorable light to Defendants, see Weyant, 101 F.3d at 845, the Moore Affidavit and National City's Rule 56.1 Statement establish that Defendants have "failed to make the required monthly payments for January 1, 2009 and each month thereafter." (Moore Aff. ¶ 6); see also Weinstein, 261 F.3d at 127 (permitting uncontested affidavits to establish the defendant's liability in summary judgment proceedings). Accordingly, the court finds that Defendants have, in fact, failed to make such payments.

---

[2] After a conference with Magistrate Judge James Orenstein on September 17, 2009, Defendants agreed to waive the first affirmative defense contained in their Answer. (Docket Entry # 11.)

Defendants have further admitted, and the court finds, that pursuant to the Guaranty Agreement, Robert Schneck is liable to National City (Complaint ¶ 13; Answer ¶ 3); that in the event of a default, National City is entitled to title and possession of the leased watch cases under the MLA (Complaint ¶ 14; Answer ¶ 3); and, under the MLA, Defendants are liable to National City for its attorneys' fees and costs (Complaint ¶ 15; Answer ¶ 3).

## III. DISCUSSION

### A. Choice of Law

A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice of law rules, to determine the applicable substantive law. See Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941)). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000).

Section 18 of the MLA contains a choice of law provision, stating, "The Lease shall be deemed to have been made and delivered in the State of Michigan and shall be governed in all respects by the laws of such State." (Complaint, Ex. A.) The MLA also states – and no party contests – that Varilease is "a Michigan corporation . . . ." (Id.) No party has alleged that Varilease or Omni Watch entered the MLA by fraud or duress. See Hartford Fire Ins., 230 F.3d at 546. Further, the court concludes that Michigan has sufficient contacts with the transaction both because the MLA lists Varilease as a Michigan corporation, and because the MLA states it

5

was "made and delivered in the State of Michigan." (Complaint, Ex. A.) Michigan law, therefore, governs the MLA. See Hartford Fire Ins., 230 F.3d at 546.

### B. Omni Watch's Default Under the Lease

National City claims that because Omni Watch failed to make its monthly payments under the MLA, Omni Watch has "defaulted" under section 16 of the lease. (Complaint ¶ 9.) Section 16(a) states: "The following shall be deemed 'Events of Default' under the Lease: (1) Lessee fails to pay any installment of rent or other charge or amount due under the Lease when the same becomes due and payable and such failure continues for ten (10) days after its due date . . . ." (Complaint, Ex. A.) The signature page to the MLA names Varilease as the "Lessor" and Omni Watch as the "Lessee." (Id.) Omni Watch has failed to pay the monthly rent required by the MLA from January 1, 2009 until the present. (See supra section II.) It follows, then, that Omni Watch has failed to pay an installment of rent as required by the MLA, and that failure has continued for at least ten days after its due date. "Apply[ing] the plain language of the contract itself," Old Kent Bank v. Sobczak, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000), the court concludes that Omni Watch has defaulted under the lease. Accordingly, the court will grant summary judgment in favor of National City.

## IV. DAMAGES

### A. Sufficiency of Evidence for Calculating Damages

In granting summary judgment, a district court has discretion as to the need for a separate hearing on the issue of damages. Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2d Cir. 1993). The contours of this discretion in the summary judgment context are the same as those in Federal Rule of Civil Procedure 55(b)(2), which governs default judgments. Id. Federal Rule of Civil Procedure 55(b)(2) "provides that on the matter of damages 'the court may conduct such

hearings or order such references as it deems necessary and proper.' " Tamarin, 13 F.3d at 53-54 (quoting Fed. R. Civ. P. 55(b)). The district court may forgo a hearing on damages and conduct its own calculations where the court has a "sufficient basis from which to evaluate the fairness of the sum." Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Svcs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Evidence such as "detailed affidavits and documentary evidence" constitute a "sufficient basis" for the district court to calculate damages without a separate hearing. Fustok, 873 F.2d at 40.

National City has submitted – and Defendants do not contest – numerous papers related to damages for National City's claim. The MLA, and its accompanying attachments and schedules, sufficiently specify the Base Monthly Rental, the liquidated damages owed to National City in the event of a default, and the interest Defendants must pay in the event of a late rent payment. (See Complaint, Ex. A.) National City's counsel also seeks attorneys' fees and costs under the MLA, and its counsel submits a detailed Affidavit of Services – which Defendants do not contest – for those charges. (Docket Entry # 19-3.) There is sufficient "affidavit[] and documentary evidence" for this court to proceed with its own damages calculation without a separate hearing. See Fustok, 873 F.2d at 40.

B.   **Damages for Default Under the MLA**

In the event of a default, section 16(b) of the MLA allows the Lessor to declare the Lessee in default. (Complaint ¶ 9, Ex. A.) When the Lessor declares the Lessee in default, section 16(b) requires the Lessee to pay:

> (i) any unpaid amount due on or before Lessor declared the Lease to be in default, plus
>
> (ii) as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Stipulated Loss Value for the Equipment computed as of the date the

last Base Monthly Rental payment was due prior to the date Lessor declared the Lease to be in default, plus

(iii) all attorney and court costs incurred by Lessor relating to the enforcement of its rights under the Lease.

(Id., Ex. A.)

National City filed its Complaint on March 6, 2009, declaring Defendants to have defaulted under the MLA. (See id., Ex. A.) There is no evidence to indicate that National City declared Defendants to have defaulted at an earlier time. Therefore, the court finds that National City declared Defendants to have defaulted on March 6, 2009.

1. <u>Unpaid Rent</u>

Under Amendment No. 01 Schedule No. 01 to the MLA, Defendants agreed to a Base Monthly Rental of $13,636.35. (Id., Ex. A.) Defendants have failed to pay rent to National City beginning January 1, 2009. (See supra section II.) Therefore, by the date that National City declared Defendants to be in default, Defendants had failed to pay three months of the Base Monthly Rental: January 2009, February 2009, and March 2009. The court calculates that three months of Base Monthly Rental at $13,636.35 per month totals $40,909.05 in unpaid rent.

2. <u>Liquidated Damages</u>

Subparagraph (ii) of Section 16(b) of the MLA entitles the Lessor to liquidated damages "equal to the Stipulated Loss Value for the Equipment computed as of the date the last Base Monthly Rental payment was due prior to the date Lessor declared the Lease to be in default." (Id., Ex. A.) Because National City declared the defendants in default on March 6, 2009, "the date the last . . . payment was due prior to" March 6, 2009 was March 1, 2009. (See Complaint, Ex. A (stating that the Base Monthly Rental is due on the first of each month).) Attachment A to the MLA provides a schedule to calculate the Stipulated Loss Value under the MLA: the value of

8

the applicable item multiplied by a "Stip Loss Percentage" as specified by the applicable "Rent Payment Number." (Id., Ex. A.)

The MLA specifies that the "Base Term of the Lease shall begin on the Base Term Commencement Date." (Id., Ex. A.) The Base Term Commencement Date is "the first day of the calendar quarter following the date specified on the Installation Certificate." (Id., Ex. A.) The Installation Certificate is dated May 5, 2008. (Rule 56.1 Statement, Attachment A.) The "first day of the calendar quarter following" May 5, 2008 is July 1, 2008. Therefore, the Base Term Commencement Date is July 1, 2008. Because July 1, 2008 is the first date of the Base Term of the MLA, the March 1, 2009 rent payment is the ninth rent payment. Under Attachment A to the MLA, the ninth rent payment specifies a Stip Loss Percentage of 100.43%. Accordingly, "the Stipulated Loss Value for the Equipment computed as of the date the last Base Monthly Rental payment was due prior to the date the Lessor declared the Lease to be in default" is 100.43% multiplied by $526,500.00, the value of the Equipment specified in Amendment No. 01 Schedule No. 01 to the MLA. The court calculates this to be $528,763.95.

3. <u>Attorneys' Fees and Costs</u>

Subparagraph (iii) of Section 16(b) of the MLA entitles the Lessor to "all attorney and court costs incurred by Lessor relating to the enforcement of its rights under the Lease." (Id., Ex. A.) Defendants admit that in the event of a default, they are liable for these charges and "contractual attorneys' fees." (Answer ¶ 3.) National City's counsel submits, and Defendants do not contest, an Affidavit for Services rendered regarding its representation of National City. (Docket Entry # 19-3.) National City's counsel attests that they have performed $9,441.33 worth of legal services for National City at a rate of $290.00 an hour for partners and $240.00 an hour for associates, and submit detailed invoices demonstrating their time spent working on the

9

matter. (Id.) These charges are reasonable on their face. See N.Y. City District Council of Carpenters Pension Fund v. Mcintosh Interiors, LLC, No. 10-cv-2243 (RMB), 2010 WL 3001907, at *2 (S.D.N.Y. July 20, 2010) (assessing attorneys' fees based on the plaintiff's counsel's unopposed affidavit of services where charges were deemed to be reasonable on their face). Therefore, the court calculates the "attorney and court costs" owed by Defendants under the MLA to be $9,441.33.

### C. Late Fees

In its Complaint, National City requests late fees of $545.46 for Plaintiff's unpaid rent under the MLA. (Complaint ¶ 12.) Defendants oppose these charges. (Answer ¶ 4.) Nothing in the MLA, nor in any of its attached schedules, authorizes such charges. Accordingly, the court rejects National City's contention that Plaintiff owes it $545.46 in late fees.

### D. Interest

#### 1. Usury Defense

National City claims that it deserves "accruing interest" under the MLA for Defendants' default. (Complaint ¶ 12.) Defendants deny they owe interest to National City and argue, as an affirmative defense, that the interest specified in the lease is usurious. (Answer ¶¶ 4, 16-18.)

Both National City and Defendants cite New York case law to support their positions. It is Michigan law, however, that controls the MLA. (Complaint, Ex. A; see supra III.A.) Michigan law forbids corporate defendants from claiming usury as a defense. Mich. Comp. Laws Ann. § 450.1257 (West 2010) ("A domestic or foreign corporation, whether or not formed at the request of a lender or in furtherance of a business enterprise, may by agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the legal rate and the defense of usury shall be prohibited."). This prohibition extends to an individual guarantor of corporate

debt, even if the guarantor is not a corporate entity. See In re Cadillac Wildwood Dev. Corp., 138 B.R. 854, 857 (W.D. Mich. Bankr. 1992) (recognizing that individual guarantors were precluded from the defense of usury by the operation of Michigan Compiled Laws § 450.1257). Accordingly, the court applies Michigan law and prohibits Defendants from asserting usury as a defense to the interest provision in the MLA.

2. Calculation of Interest

Section 3(b) of the MLA provides:

> For any payment of rent or other amount due under a Lease which is past due, interest shall accrue at the rate of 2% per month, from the date such payment was due until payment is received by Lessor . . . .

(Complaint, Ex. A.) Defendants have failed to pay the Base Monthly Rent for the months of January 2009, February, 2009, and March 2009. (See supra section II.) Defendants have no other amounts "past due." Therefore, for the January 2009 rent payment, the court assesses interest according to the MLA from its due date, January 1, 2009, until the present, or twenty-one months worth of interest. Two percent interest on the Base Monthly Rental of $13,636.35 is $275.73 per month; twenty-one months worth of interest on the January 2009 rent payment is $5,727.33. Similarly, the MLA provides for twenty months of interest on the February 2009 rent payment, or $5,454.60; and for nineteen months of interest on the March 2009 rent payment, or $5,181.87. Therefore, the court calculates that Defendants owe National City $16,363.80 in total interest under the MLA.

E. **Mitigation of Damages**

Under Michigan law, a lessor-plaintiff "has a duty to mitigate damages by making efforts that are reasonable under the circumstances to minimize the economic harm caused by the wrongdoer." Lewis v. Cross, No. 276062, 2008 WL 2744378, at *4 (Mich. Ct. App. July 15,

2008). The lessee-defendant, however, "bears the burden of proving [the lessor-plaintiff's] failure to mitigate." Lawrence v. Will Darrah & Assocs., Inc., 516 N.W.2d 43, 49 (Mich. 1994). Where the lessee-defendant fails to prove that the lessor-plaintiff did not mitigate its damages, the court must reject the lessee-defendant's defense. See Lawrence, 516 N.W.2d at 49.

Defendants assert, as an affirmative defense, that National City has an obligation to mitigate damages by re-possessing the leased watch cases "in order to minimize defendant's liability herein." (Answer ¶ 14.) National City argues that it is not required to do so according to sections 6(d) and 16(b) of the MLA. (Memorandum of Law (Docket Entry # 19-2) at 6-7.)

Even if National City does have an obligation to mitigate damages related to the leased equipment, the burden lies on Defendants to prove that National City has failed to mitigate damages with respect to the watch cases. See Lawrence, 516 N.W.2d at 49. Defendants' only proof of this failure, however, are paragraphs 13 to 15 of their Answer. (See Answer ¶¶ 13-15.) Michigan law, however, requires more than a mere averment in a lessee-defendant's answer that a lessor-plaintiff has failed to mitigate damages. Michigan courts have found that a lessee-defendant has failed to carry its burden that a lessor-plaintiff has failed to mitigate damages even with witness testimony at trial. See Fothergill v. McKay Press, 132 N.W.2d 144, 145-46 (Mich. 1965); TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 550-552 (6th Cir. 1981). Accordingly, this court finds that Defendants have failed to carry their burden of proof that National City has failed to mitigate its damages resulting from Defendants' default under the MLA.

F.  **Prejudgment Interest**

"The awarding of prejudgment interest is considered a question of substantive law." Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999). In a contract action with a choice of law provision, the substantive law of the chosen jurisdiction controls the award of

prejudgment interest. <u>Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.</u>, 87 F.3d 604, 614 (2d Cir. 1996). In Michigan, Michigan Compiled Laws § 600.6013 governs prejudgment interest. Mich. Comp. Laws § 600.6013. Subparagraph 7 of § 600.6013 begins the calculation of prejudgment interest from the time the complaint was filed through the satisfaction of the judgment, and limits prejudgment interest to "13% per year, compounded annually." <u>Id.</u> § 600.6013(7). In a contract action, attorneys' fees are excluded from prejudgment interest. <u>Giannetti Bros. Const. Co., Inc. v. City of Pontiac</u>, 438 N.W.2d 313, 316 (Mich. Ct. App. 1989).

Accordingly, the court finds that National City is entitled to prejudgment interest of 13%, compounded annually, on amounts owed to it on March 6, 2009, excluding attorneys' fees. <u>See</u> <u>Giannetti</u>, 438 N.W.2d at 316. On March 6, 2009, Defendants owed National City $40,909.05 in unpaid rent and $528,763.95 in liquidated damages. On March 6, 2009, Defendants also owed $818.18 in contractual interest for the January 2009 rent payment; $545.45 for the February 2009 rent payment; and $272.73 for the March 2009 rent payment. Adding these to the amount due in unpaid rent and liquidated damages, Defendants owed National City $571,309.36 on March 6, 2009. Compounded annually at 13% per year, prejudgment interest on this amount equals $74,270.22 for the March 6, 2009 to March 6, 2010 year. Because the statute provides that interest is only to be compounded annually, National City is not entitled to prejudgment interest from March 6, 2010 until now.

### G. Total Damages

The court summarizes the total damages in the table below:

| Unpaid rent | $40,909.05 |
|---|---|
| Liquidated damages | $528,763.95 |
| Attorneys' fees and costs | $9,441.33 |

| Contractual interest on payments past due | $16,363.80 |
| SUB-TOTAL | $595,478.13 |
| Prejudgment interest | $74,270.22 |
| TOTAL | $669,748.35 |

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against both Defendants as follows: (1) title and possession of the leased equipment specified in the MLA; $595,478.13 in contractual damages and $74,270.22 in prejudgment interest, for a total award of $669,748.35, plus any post-judgment interest accruing from the date of this Memorandum and Order pursuant to 28 U.S.C. § 1961. The clerk of the court is further directed to close this case.

SO ORDERED.                                                    s/Nicholas G. Garaufis

Dated: Brooklyn, New York                                      NICHOLAS G. GARAUFIS
September __, 2010                                             United States District Judge